**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION**

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                     No. 4:04CR00291-01 JLH

BOBBY GLENN BANKS                                                          DEFENDANT

## OPINION AND ORDER

Bobby Banks was convicted of conspiring to distribute more than 5 kilograms of cocaine and

50 grams of cocaine base in violation of 21 U.S.C. § 846, using a communications facility in

committing a federal offense in violation of 21 U.S.C. § 843(b), aiding and abetting the distribution

of cocaine base in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2, distribution of cocaine base

in violation of 21 U.S.C. § 841(a), and endeavoring to intimidate an officer of the United States in

violation of 18 U.S.C. § 1503(a).  He was sentenced to 55 years imprisonment.  His conviction and

his sentence were affirmed on appeal.  *United States v. Banks*, 494 F.3d 681 (8th Cir. 2007).

Banks has filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.

In addition to Banks's petition and the government's response, the Court has reviewed the entire trial

transcript, the transcripts of the sentencing hearing, and the briefs filed on behalf of Banks on appeal.

For the reasons that follow, the Court has concluded that Banks's motion to vacate or set aside his

sentence is without merit and should be denied.

Banks's motion to vacate or set aside his sentence is largely based on claims of ineffective

assistance of counsel.  To prevail on a claim of ineffective assistance of counsel, a defendant must

show that his lawyer's performance was deficient and that the deficient performance prejudiced the

defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674

(1984).  Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689, 104 S. Ct. at 2065.  Because of the distorting effects of hindsight and the difficulty of viewing counsel's representation of the client from the perspective available to defense counsel at the time of trial, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 669, 104 S. Ct. at 2055.  Proving that the deficient performance prejudiced the defense requires showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different.  *Id*. at 694, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695, 104 S. Ct. at 2068-69.  In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different, the Court must consider the totality of the evidence before the judge or the jury.  *Id*.

Banks devotes a substantial part of his motion to arguing that his trial counsel was ineffective for failing to inform him of plea offers made by the government and in failing to advise him of the weight of the evidence against him.  Banks says in an affidavit that his lawyer "never mentioned the possibility of a plea agreement."  Banks continues to maintain his innocence but argues that, nevertheless, if he had been informed of the weight of the evidence against him, he would have entered an Alford Plea, which is a plea in which the defendant waives the right to a trial by pleading guilty while continuing his claim of innocence.  *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct.

2

160, 27 L. Ed. 2d 162 (1970). *See also White v. United States*, 858 F.2d 416, 417 n.2 (8th Cir. 1988). Banks reconciles his claim of innocence with the fact that the evidence against him was overwhelming by saying that the government presented perjured testimony. As he put it in his affidavit, "the government procured controversial criminals to lie on me." Banks says in his motion, "It goes without saying that had Banks been fully apprised and informed as the result of effective counsel, an Alford Plea would have been considered as an 'only option' to maybe save his own life. Again, despite the fact that that he maintains his innocence." Document #748 at pp. 18-19. Banks also says in his motion, "From the inception of this case, the government approached the petitioner with deals that consisted of a reduced sentence for information and testimony against others. When Banks could not accommodate the government in this fashion, the proverbial 'kitchen sink' was thrown at him." Document #748 at pp. 29-30. Thus, Banks contends that he was actually innocent and was falsely accused of the crimes with which he was charged; that the government offered him plea agreements in which he would receive some consideration for cooperating in the government's efforts to prosecute others, but because he is innocent he declined those plea offers; and that then the government threw the kitchen sink at him, using perjured testimony from criminals who had engaged in plea bargains.

The government has presented an affidavit from Banks's trial lawyer stating that he communicated every plea offer to Banks and that he reviewed the discovery prior to trial and disclosed the information to Banks. Banks's trial lawyer says in his affidavit, "The evidence against my client was overwhelming and I knew it and I disclosed that to my client." He also says that Banks refused to believe that these witnesses would testify against him.

Although the affidavits of Banks and his trial counsel are in conflict, no evidentiary hearing is needed to resolve the conflict.  First, Banks's argument is coherent only on the assumption that the government used perjured testimony throughout its case.  Otherwise, Banks could not claim that he is innocent and simultaneously admit that the evidence against him was overwhelming.  The nature of this case is such that if Banks is innocent, and if the evidence against him is overwhelming, the only explanation is that the government manufactured the evidence using perjured testimony.  However, Banks offers no support for his allegation that the government manufactured evidence.  No reasonable person can read the transcript and believe witness after witness took the stand and committed perjury in this case.  Banks has presented a story that is unbelievable.

Second, Banks contradicts his own statement that he was never informed of plea offers from the government.  He says in his affidavit that his trial counsel "never mentioned the possibility of a plea agreement," but he says in his motion, "From the inception of this case, the government approached the petitioner with deals that consisted of a reduced sentence for information and testimony against others."  Thus, contrary to his affidavit, Banks knew from the inception of the case that the government was interested in a negotiated plea, but he declined to negotiate.

Third, the trial transcript shows that Banks was offered a plea agreement after he was fully informed of the evidence against him, but he nevertheless refused to accept it.  During a recess on the third day of trial, an Assistant United States Attorney stated, out of the presence of the jury, "I wanted to put something on the record that I had made a plea offer to Mr. Banks earlier this morning which he rejected, and I just wanted to put that on so we'd have a record of it."  Tr. 433.  Defense counsel confirmed on the record that a plea offer had been made and that Mr. Banks had rejected it.  *Id*.  The record of this rejected plea offer was made during the direct examination of the thirteenth

4

government witness.  By that point of the trial, the government had already made an opening statement and explained in open court, with Banks present, the nature and weight of the evidence against him.  Twelve witnesses had testified, and a thirteenth witness was on the stand.  The strength of the government's case was apparent by that time.  Indeed, Banks's affidavit says that by the time the government offered him this plea agreement, he was "distraught."  If he was distraught, he was undoubtedly distraught because he understood at that point the weight of the evidence against him. Nevertheless, he rejected the offer of a plea agreement with the government.

Assuming that Banks had attempted to enter into an Alford Plea, nothing in the record supports Banks's assumption that the plea would have been accepted.  As noted, Banks continues to maintain his innocence, despite the numerous witnesses who testified against him, and the existence of tape recordings of transactions in which he sold controlled substances to confidential informants.  Although an Alford Plea is permitted by the constitution, a court is not obligated to accept such a plea.  *United States v. Buonocore*, 416 F.3d 1124 (10th Cir. 2005).  A court is not even required to consider a plea agreement.  *In re Yielding*, 599 F.2d 251 (8th Cir. 1979).  Thus, even if we assume – contrary to the facts as shown in the trial transcript – that Banks would have been willing to enter into a plea agreement and enter an Alford Plea had he been informed about the weight of the evidence against him, the Court would not have been obligated to accept the plea. Ordinarily, a defendant must admit his guilt before a court accepts a guilty plea.  On this record, it is highly unlikely that the Court would have permitted Banks to plead guilty while claiming innocence and while asserting that the government's case against him was based on perjured testimony.

In addition to his assertion that his lawyer was ineffective for failing to communicate plea offers and failing to inform him of the weight of the evidence against him, Banks argues that his counsel was ineffective at trial in several respects.  All of those claims are undermined by Banks's admission that the evidence against him was overwhelming.  Banks not only admits that the weight of the evidence against him was overwhelming, he touts that fact as an indication that his lawyer was ineffective for failing to tell him how strong the government's case was and failing to arrange an Alford Plea.  Banks makes no argument that there is a reasonable probability that, but for his lawyer's mistakes, the outcome of the case would have been different.  Banks's argument that his lawyer was ineffective at trial can be rejected solely because Banks does not allege that there is a reasonable probability that, but for his lawyer's mistakes, the outcome of the case would have been different.  *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366, 371, 88 L. Ed. 2d 203 (1985); *Paul v. United States*, 534 F.3d 832, 838 (8th Cir. 2008).

Even so, the Court will address Banks's specific allegations of ineffective assistance of counsel.  Banks argues in his motion that his lawyer was unprepared for trial, but the trial transcript shows to the contrary.  Banks's trial lawyer cross-examined each of the government's witnesses and did so in such a manner as to show that he was prepared for trial.  Many of the government's witnesses had prior convictions, and Banks's trial lawyer was prepared to impeach them and did impeach them with evidence of their prior convictions.  He also knew whether each witness had made a plea agreement with the government and, if so, what the plea agreement stated regarding cooperation.  A number of the witnesses denied having entered into a plea agreement with the government, and Banks's trial lawyer successfully demonstrated that their denial was untrue.  He demonstrated that a number of these witnesses had entered into plea agreements with cooperation

provisions pursuant to which the witnesses could anticipate motions for downward departure based on substantial assistance. Furthermore, Banks's trial lawyer interrogated witnesses based on inconsistencies within the testimony of those witnesses, as well as inconsistencies between the testimony of different witnesses. He objected to evidence offered by the government numerous times during the trial, and he moved for a mistrial when evidence was received that seemed unduly prejudicial. It would be untrue to say that Banks's trial lawyer was so unprepared that he was not functioning as the counsel guaranteed by the Sixth Amendment. He subjected the prosecution's case to meaningful adversarial testing. *Cf. Malcom v. Houston*, 518 F.3d 624, 627 (8th Cir. 2008). If the trial transcript showed that Banks's trial lawyer was not prepared for trial and had not subjected the prosecution's case to meaningful adversarial testing, the Court would consider whether this is a circumstance in which a presumption of prejudice would be appropriate. *See United States v. White*, 341 F.3d 673, 678-79 (8th Cir. 2003). However, the trial transcript shows that Banks's trial lawyer was prepared for trial and did subject the prosecution's case to meaningful adversarial testing.

Banks alleges that his trial lawyer was ineffective for failing to summon witnesses in a timely fashion. Four witnesses were called for the defense. In addition to those four witnesses, Banks wanted to recall Clyde Hatchett, the confidential informant who had testified in the government's case, and two other persons, Brandon White and Frankie Webb. All three of these witnesses were incarcerated, but Banks's trial lawyer had not asked that Hatchett be retained after he testified in the government's case, so the Marshal had returned Hatchett to his place of incarceration outside the state of Arkansas. Banks's trial lawyer also failed to make timely arrangements for a writ so as to obtain the presence of the other two witnesses. Banks has made no allegation with respect to the substance of the testimony that he would have expected from any of these three witnesses had they

7

been called to testify for the defense, which is to say that he has made no allegation that if these witnesses had been called there is a reasonable probability that the outcome of the case would have been different.  There is nothing before the Court that would indicate that any of these witnesses, or all of them taken together, would have testified in such a manner as to create a reasonable probability that the outcome of the trial would have been different.  Assuming, therefore, that Banks's trial lawyer was deficient for failing to make the necessary arrangements for these persons to be present, Banks still has not sufficiently alleged the prejudice element of the *Strickland* test.[1]  *Hill*, 474 U.S. at 60, 106 S. Ct. at 371; *Paul*, 534 F.3d at 838.

Banks complains that his trial lawyer waived opening statement, but his argument that it was ineffective to do so is conclusory at best.  *Cf. Clayton v. Gibson*, 199 F.3d 1162, 1178 (10th Cir. 1999); *United States v. Miller*, 907 F.2d 994, 998 (10th Cir. 1990).  Assuming that the decision to waive opening statement was below professional standards, Banks makes no allegation that an opening statement might have changed the outcome.

Banks argues that his trial lawyer made an improper request in front of the jury when he objected to a letter and said that he thought there was something in the letter that the Court needed to know but the jury should not know.  The transcript shows that defense counsel made an objection to a government exhibit and asked to approach the bench.  The Court asked why he could not make his argument without approaching the bench, and defense counsel responded, in effect, that he needed to explain the content of the letter to the Court out of the presence of the jury.  There is nothing about that exchange that falls below reasonable professional standards.

---

[1] The affidavit of Banks's trial counsel says that Banks did not say that he wanted these witnesses until the last minute and that he did not believe that these witnesses would have impeached the government's witnesses.

Banks argues that his lawyer failed to object to leading questions, but the portion of the transcript to which he cites involves questions to which competent counsel typically would not object, even though they were leading, because there is no doubt that the same evidence would have come in had the questions not been leading.  The transcript shows that defense counsel objected on numerous occasions throughout the trial.  The fact that he did not object to some leading questions when the same testimony would have been given anyway hardly shows that his performance fell below the *Strickland* standard.

Banks argues that his trial lawyer failed to request a mistrial when a juror reported having been asked on an elevator where all the jurors were from and what was her view of the case.  The transcript shows that the juror reported this incident to the Court, an in chambers hearing was conducted, the juror stated that she had told this person on the elevator that she could not discuss the case, and the juror stated that the incident would have no bearing whatsoever on that juror's ability to be fair and impartial to both sides.  The transcript shows no basis for a motion for mistrial.  Failure to make a motion for mistrial in this instance is no indication that counsel's performance fell below the *Strickland* standard.

Banks complains that his trial lawyer did not object to the testimony of a government expert, Felicia Lackey, who apparently was in court during the testimony of the previous witness.  The transcript does not show that anyone asked that expert witnesses be excluded from the courtroom. The testimony of the fact witness who preceded Lackey was wholly unrelated, so there is no possibility that Lackey's testimony could have been influenced by what she heard.  The record does not show any basis for excluding Lackey's testimony, so the failure to move to exclude Lackey was not ineffective assistance of counsel.

9

For purposes of ruling on Banks's 2255 motion, the Court will assume that the failure to obtain the three witnesses whom Banks wanted in the defense of his case fell below the standard of reasonably competent counsel.  Otherwise, Banks has made no showing with respect to any of his allegations that counsel's performance was so deficient as to meet the first element of the *Strickland* test.  Furthermore, he has failed to make any allegations with respect to the second element of the *Strickland* test.

Banks next argues that his lawyer was ineffective at the sentencing phase of the trial because he did not file written objections to the portion of the presentence report that concluded that Banks was responsible for 1.5 kilograms of crack cocaine.  However, a written objection was filed (Document #601) and the Court entertained arguments on the merits of this issue before overruling the objection.  *See* Transcript of Sentencing Volume 2, at 20-23.  *See also Banks*, 494 F.3d at 687-88.  Banks's argument on this point is without merit.

Finally, Banks argues that his appellate counsel was ineffective.[2]  That argument is wholly without merit.  Banks offers nothing that would meet either element of the *Strickland* test with respect to appellate counsel.

In addition to these arguments that he was denied effective assistance of counsel, Banks argues that his conviction should be set aside because of prosecutorial misconduct.  The basis for this whole line of argument is that Banks was actually innocent, an argument for which there is no basis in the record.  Banks's assertion that the government used perjured testimony is supported by

---

[2] Banks was represented by retained counsel at trial, but a different lawyer was appointed to represent him on appeal.

nothing.   The evidence shows that Banks is guilty of the crimes charged, and the government committed no misconduct in presenting the case against him.

## CONCLUSION

For all of these reasons, Banks's motion to vacate or set aside his sentence under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED this 9th day of March, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE